**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| DARRIN D. HOLSTON, #288828, | ) ) ) | CIVIL ACTION NO. 9:17-899-HMH-BM |
| Petitioner, | ) ) | |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| | ) ) | |
| LEROY CARTLEDGE, | ) ) | |
| Respondent. | ) ) | |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on April 3, 2017.[1]

The Respondent filed a return and motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on September 28, 2017. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on September 29, 2017, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case. Petitioner filed a motion to stay, which was denied, and an appeal of the order denying his motion, which was also denied. Petitioner thereafter filed his memorandum in opposition to the Respondent's motion for summary judgment on January 22, 2018.



---

[1]Filing date pursuant to Houston v. Lack, 487 U.S. 266, 270-276 (1988).

This matter is now before the Court for disposition.[2]

### **Procedural History**

Petitioner was indicted in the December 2010 term of the Aiken County Grand Jury for first degree burglary [Indictment No. 2010-GS-02-01899], attempted armed robbery [Indictment No. 2010-GS-02-1905], and kidnapping [Indictment No. 2010-GS-02-01903], all relating to an armed robbery Petitioner committed on or about July 17, 2010.  (R.pp. 343-350).  Petitioner was represented by Wallis Alves, Esquire.  After a trial by jury on May 9-12, 2011, the jury returned a verdict of guilty on all charges.  (R.pp. 1-332).  Petitioner was sentenced to three concurrent terms of life without parole. (R.pp. 333-339, 345, 348, 351).

Petitioner thereafter filed a timely appeal. Petitioner was represented on appeal by Robert M. Pachak, Appellate Defender with the South Carolina Commission on Indigent Defense, who raised the following issue:

> Whether the trial court erred in allowing [Petitioner] to be impeached with a prior conviction of first degree criminal sexual conduct when the conviction was not a crime of dishonesty and trial court failed to put a Rule 403, SCRE analysis on the record?

See Court Docket No. 18-4, p. 4.

Petitioner then filed a pro se motion to be relieved of appellate counsel and a pro se motion to stay his direct appeal.  See Court Docket No. 18-6.  In his filing, Petitioner raised a number of issues he believed that appellate counsel should have raised on his behalf.  Id.  The South Carolina Court of Appeals denied the motions and additionally found that Petitioner's desired direct appeal issues were

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. Respondent has filed a motion for summary judgment. As this is a dispositive motions, this Report and Recommendation is entered for review by the Court.



either raised by appellate counsel or were not cognizable on direct appeal and could later be addressed during post-conviction relief. See Court Docket No. 18-7. Subsequently, on December 28, 2012, the South Carolina Court of Appeals affirmed Petitioner's convictions. See Court Docket No. 18-8. Petitioner filed a pro se motion for reconsideration, which the state Court of Appeals returned to him.[3] See Court Docket No. 18-9. The Remittitur was sent down on January 23, 2013. See Court Docket No. 18-10.

On April 15, 2013, Petitioner filed an application for post-conviction relief (APCR) in state circuit court; Holston v. State of South Carolina, No. 2013-CP-02-856 (see R.pp. 352-357); in which he raised the following issues:

**Ground One:** Police Misconduct.

**Ground Two:** Ineffective Assistance of Appellate Counsel.

**Ground Three:** Ineffective Assistance of Trial Counsel.

**Ground Four:** Prosecutorial Misconduct.

**Ground Five:** Abuse of Discretion (Trial Court Err).

(R.p. 354). Petitioner also filed a memorandum expounding on his claims in the order presented below:

A. Counsel elicited corroborative hearsay testimony from prosecution witnesses and defense witnesses as to what the victim said that bolstered alleged victims credibility.

B. Counsel failed to interview defense witnesses to ascertain whether they would support defendant's theory of the case.

C. Counsel failed to motion the courts for a Rule 403 analysis on evidence that prosecution and trial counsel submitted that had the propensity to mislead and confuse

---

[3]Since Petitioner was still represented by counsel, the state Court of Appeals stated that it could not accept his pro se Petition for Rehearing. See Court Docket No. 18-9.



the jury.

D.  Counsel denied the [Petitioner] the opportunity to confront witnesses against him by stipulating forensic Inv. Clay Adams and forensic examiner Cathey Lelsy reports instead of calling them as witnesses.

E.  Counsel failed to object to the trial courts admitting a CD into evidence without a proper foundation for that evidence being laid.

F.  Counsel failed to motion the courts for RULE 609 balancing analysis.

G.  Counsel failed to object to misstatements made by alleged victim Willie Walker.

H.  Cumulative Prejudice.

I.  Conspiracy.

J.  Police misconduct.

(R.p. 359)[Errors in Original].

Lance Boozer, Esquire, was appointed to represent the Petitioner, and amended his petition to include the following claims:

(a) Trial Counsel was ineffective for laboring under a conflict of interest.

(b) Failing to make a contemporaneous objection in order to preserve [Petitioner's] 403 objection for direct review.

(c) Failure to object to prosecutorial misconduct.

(R.p. 488).

An evidentiary hearing was held on August 1, 2014 to consider Petitioner's PCR application.  (R.pp. 490-557).  In an order filed October 9, 2014 (dated October 3, 2014), the PCR court addressed the following claims of ineffective assistance of counsel based upon the evidence presented:

**Ground One**: Counsel elicited corroborative hearsay testimony from prosecution witnesses and defense witnesses as to what the victim said that bolstered alleged



4

victim's credibility;

**Ground Two**: Counsel failed to interview defense witnesses to ascertain whether they would support defendant's theory of the case;

**Ground Three:** Counsel failed to motion the courts for a Rule 403 analysis on evidence that prosecution and trial counsel submitted that had the propensity to mislead and confuse the jury;

**Ground Four:** Counsel denied the [Petitioner] the opportunity to confront witnesses against him by stipulated forensic Inv. Clay Adams and forensic examiner Cathey Leisy reports instead of calling them as witnesses;

**Ground Five:** Counsel failed to object to trial courts admitting a CD into evidence without a proper foundation for that evidence being laid;

**Ground Six:** Counsel failed to motion the courts for Rule 609 balancing analysis; and

**Ground Seven:** Counsel failed to object to misstatements made by alleged victim Willie Walker.

(R.pp. 566, 568-572, 574).

In that order, the PCR judge denied Petitioner's application and dismissed the case with prejudice. (R.pp. 558-576).

Petitioner's counsel moved pursuant to S.C.R.Civ.Pro. 59(e) to alter or amend judgment to consider the following claims not addressed in the Order of Dismissal:

(a) Cumulative prejudice;

(b) Laboring under a conflict of interest;

(c) Failing to object to police misconduct; and

(d) Prosecutorial misconduct.

(R.pp. 577-579). Counsel followed up with an amended motion to include the following request for a ruling on this claim:

(a) Counsel failed to make a contemporaneous objection in order to preserve



5

[Petitioner's] 403 objection for direct review.

(R.pp. 580-581).

On March 20, 2015, the PCR judge filed an order denying Petitioner's motion to alter or amend, and

finding that the Court had properly ruled on all issues presented at the PCR hearing. (R.pp. 586-587).

Petitioner filed a timely notice of appeal. Petitioner was represented on appeal by

Kathrine Hudgins, Appellate Defender with the South Carolina Commission on Indigent Defense,

who raised the following issues:

> **Ground One**: The PCR judge erred in refusing to find counsel ineffective for calling
> two of the alleged victim's supervisors from the group home where he worked as
> witnesses at trial to testify that he falsified information on accountability log when the
> supervisors also testified that the alleged victim was a "very good employee" and a
> "wonderful employee" and the alleged victim had already admitted falsifying the
> accountability log and another witness, also called by the State, testified that the
> alleged victim received a disciplinary action for falsifying information on the
> accountability log.
>
> **Ground Two**: The PCR judge erred in refusing to find trial counsel ineffective for
> failing to preserve for appellate review the admission of Petitioner's prior conviction
> for criminal sexual conduct.[4]

See Court Docket No. 18-13, p. 2.

The South Carolina Supreme Court denied Petitioner's petition for a writ of certiorari on March 24,

2017. See Court Docket No. 18-15, p. 2. The remittitur was issued on April 11, 2017. See Court

Docket No. 18-15, p. 1.

Petitioner then filed this federal habeas petition, raising the following issues:

**Ground One:** PCR Judge erred in refusing to find counsel ineffective for calling two

---

[4]Although Petitioner filed an amended motion to reconsider to ensure that this claim was covered by the PCR court's order, the State did not argue that Petitioner had not properly pursued this claim in his APCR, and instead addressed the merits of this claim in his PCR appeal. See Court Docket No. 18-14, pp. 9-11.



of the alleged victim[']s supervisors that testified that alleged victim was a "very good employee" and a "wonderful employee."

**Ground Two:** P.C.R. Judge erred in refusing to find trial counsel ineffective for failing to preserve for appellate review the admission of petitioners prior conviction for C.S.C.

**Ground Three**: Counsel elicited corroborative hearsay testimony from prosecution witnesses and defense witnesses as to what the victim said that bolstered alleged victims credibility.

**Ground Four:** Counsel failed to interview defense witnesses to ascertain whether they would support defendants theory of the case.

**Ground Five:** Counsel failed to request a Rule 403 Analysis on pictures of a damaged door that mislead the jury.

**Ground Six:** Counsel denied the [Petitioner] the opportunity to confront Inv. Clay Adams and forensic scientist Cathey Leisy prior to admitting their reports.

**Ground Seven:** Trial counsel allowed the trial courts to admit petitioners prior criminal sexual conduct conviction without moving the courts to conduct a balancing analysis.

**Ground Eight:** Counsel failed to object to misstatements made by alleged victim Willie Walker.

**Ground Nine:** Prosecutor Kevin Malony failed to correct misstatements by alleged victim Willie Walker.

**Ground Ten:** Counsel violated [Petitioner's] civil rights by conspiring with the state and its agents in securing [Petitioner's] convictions.

**Ground Eleven:** Trial counsel failed to object to police misconduct.

**Ground Twelve:** Trial counsels deficient performance amounted to cumulative prejudice.

See Petition, pp. 5-6, 8-10 & attached unnumbered pages (Errors in Original).

## **Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers



7

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990).

## I.

When the Respondent filed its motion for summary judgment, it pointed out that Petitioner's numbering of his issues began with Ground Three. See Respondent's Memorandum in Support of Summary Judgment, pp. 8-9. However, it appears that due to an apparent scanning error, pages 2 and 4-7 of the original Petition were not scanned onto the computer, which resulted in Grounds One and Two not being included on the filed copy.[5] Even so, as discussed herein, Respondent addressed Ground One in his discussion of Ground Three, while in his response in opposition, Petitioner discusses both of these issues.[6] See Court Docket No. 41-1, pp. 1-4, 8-13. Accordingly, in light of Petitioner's pro se status, and out of an abundance of caution, the undersigned has addressed herein all issues raised by the Petitioner. See discussion, infra.

---

[5]The Clerk is directed to file a complete copy of the petition on the docket.

[6]As discussed later, Petitioner numbers his issues differently in his response than he did in his original petition.



## II.

In Grounds One and Two of the Petition, Petitioner asserts claims of PCR court error. However, these allegations as stated concern alleged infirmities in Petitioner's state PCR proceeding, and as such are not a basis for federal habeas relief. See Bryant v. Maryland, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995), cert. denied, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."];  Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief].  Accordingly, Petitioner has not shown a basis for entitlement to federal habeas relief based on these issues, as presented.  Wright v. Angelone, 151 F.3d 151, 159 (4th Cir.1998) [alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action]; Nichols, 69 F.3d at 1275; Hassine, 160 F.3d at 954.

However, in his petition, Petitioner states that he exhausted these claims in his PCR action and PCR appeal, and it therefore appears that he has intended to raise the same underlying ineffective assistance of counsel claims that he raised in the state court with regard to these issues, rather than claims regarding infirmities in his PCR.  Therefore, again in consideration of Petitioner's pro se status, the undersigned has addressed Grounds One and Two as ineffective assistance of trial counsel claims in the manner that Petitioner presented and properly exhausted them in state court, as follows:  In Ground One, Petitioner contends that his counsel was ineffective for calling two of



the alleged victim's supervisors who testified that the victim was a "very good employee" and a "wonderful employee."[7]  In Ground Two, Petitioner contends that his counsel was ineffective for failing to preserve for appellate review the admission of Petitioner's prior conviction for C.S.C.

These claims were both addressed in Petitioner's PCR proceedings, where he had the burden of proving the allegations in his petition, as well as on appeal to the State Supreme Court.[8] Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); see also (R.pp. 560-561, 563-564).  The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Holston v. State of South Carolina, No. 2013-CP-02-856.  Specifically, the PCR judge found that: 1) Petitioner testified that he met with trial counsel numerous times prior to trial; 2) that he recalled meeting with trial counsel prior to his preliminary hearing and on August 18, 2010; 3) Petitioner stated that he reviewed some of the discovery material prior to trial; 4) Petitioner stated that he did not discuss any possible defenses with trial counsel; 5) Petitioner testified that he did not give trial counsel any leads or witnesses to investigate; 6) Petitioner stated in his PCR hearing that he testified at his trial; 7) he stated the victim offered to drive him to the ATM to withdraw money to purchase marijuana; 8) Petitioner stated while he was waiting on the victim to get his wallet, he put on gloves and began to divide out some cocaine; 9) Petitioner stated while on the way to the ATM the victim pulled out a gun from underneath the driver seat and robbed the Petitioner; 10) specifically, Petitioner stated that the victim first made him strip off his clothes, then jumped out of the moving vehicle, and

---

[7]For his part, Respondent considered that Petitioner was attempting to raise this issue in Ground Three of his petition and addressed it in that section of his memorandum.

[8]Since these are Petitioner's only claims which are not procedurally barred [see discussion, infra], the undersigned discusses them, at least initially, together for background purposes.



fled to a third party house; 11) Petitioner stated the car ended up crashing and he suffered serious injuries as a result; 12) Petitioner stated that there was no disputing that he was in the victim's vehicle; 13) Petitioner stated that it was his version of events verses the victim's version of events; 14) Petitioner testified although the victim had already testified during trial, his trial counsel continued to elicit the victim's version of events from various witnesses; 15) Petitioner also referenced the fact that trial counsel called witnesses Renee Tyler and Mary Sharp to discuss the victim's statement and work history; 16) Petitioner stated that trial counsel should have motioned the court to conduct a 609 SCRE balancing analysis after she objected to the Petitioner being impeached with his prior CSC charge;

17) trial counsel testified that she had been practicing law for twenty (20) years; 18) counsel stated that she was appointed in this case and met with the Petitioner "a lot"; 19) trial counsel stated that she filed for and received all Rule 5 and Brady[9] material with the Petitioner; 20) trial counsel stated that she discussed Petitioner's version of the facts; 21) trial counsel then testified that the same facts Petitioner testified to about how the incident occurred were also relayed to her; 22) however, trial counsel testified that victim's version of the events contradicted Petitioner's version of the events; 23) specifically, trial counsel stated the victim testified Petitioner broke down the front door wearing nothing but boxers, socks, and gloves; 24) the victim further testified that Petitioner demanded four hundred dollars, but the victim did not have any money on his person; 25) as a result, the victim testified that Petitioner demanded that the victim drive him to the ATM and that on the way, the victim jumped out of the car, ran up to a third party house, and called the police; 26) counsel testified that two additional witnesses also testified that they saw the victim jump out of the moving

---

[9]Brady v. State of Maryland, 373 U.S. 83 (1963).



vehicle, saw the vehicle crash, and saw the Petitioner in the car with a gun in his lap after the crash; 27) one of the witnesses testified that a white SUV pulled up behind the crashed car, an unknown person got out of the SUV, took the gun from the Petitioner, and fled the scene;

28) trial counsel testified that the case boiled down to the credibility of the stories by the Petitioner and the victim; 29) trial counsel stated that it was her strategy to discredit the statements by the victim and argue that this was a drug deal gone bad and not a kidnapping; 30) counsel stated that she attempted to point out the various inconsistencies within the victim's statement as compared to the statements of the various witnesses and officers; 31) trial counsel stated that Petitioner wanted to testify during trial and the court informed him that he would be impeached with his prior offenses; 32) trial counsel stated that Petitioner had a prior 2006 CSC conviction and she explained to the Petitioner that he was going to be impeached with his prior conviction if he chose to testify; 33) trial counsel testified that she objected to the use of the conviction and argued that it would be more prejudicial than probative; 34) however, trial counsel testified that the charge was within the ten year period necessary for impeachment purposes; 35) trial counsel further stated that the court had a side bar where the court explained that it was going to allow the Petitioner to be impeached with the prior conviction, but to remind him to place on the record his 403 analysis; 36) counsel stated the court did not like to send the jury out unnecessarily and requested counsel to remind the court to place his findings on the record; 37) however, counsel stated that she forgot to remind the court to place his findings on the record until the end of trial;

38) counsel stated that she brought up the CSC conviction on direct to "take the wind out of the prosecutor's sails"; 39) counsel stated that there were other witnesses who spoke with the victim about his version of events; 40) that her strategy was to bring out the inconsistencies in the



12

victim's version of events through the testimony of various witnesses; 41) counsel stated that she was trying to show that the victim was lying about what happened that night; 42) counsel stated that she did not feel the witnesses' testimony bolstered the victim's credibility, but instead made the victim look less credible because of the inconsistencies; 43) counsel stated she called Renee Tyler and Mary Sharp to show that the victim had falsified documents for mentally handicapped people; 44) counsel explained that the victim was responsible for filling out a log book at various points during the night after he checked on the tenants; 45) however, the victim filled out the log book in advance and received a disciplinary action; 46) trial counsel testified that she also introduced exhibits to show that the front door was not busted open as alleged by the victim; 47) counsel stated that the pictures helped point out inconsistencies in the description of the scene at the Tri-County house; 48) counsel stated that she could have gotten this information out during cross-examination of the victim, but felt it would carry more weight with the jury when it came from the victim's employers; 49) counsel stated that she was aware the victim received a monetary award for his bravery from his employer and was aware that his employers were going to testify that he was a good employee; 50) counsel reasoned that no employer was going to testify that they employ a poor employee; 51) counsel further stated that Petitioner was consulted on the trial strategy and knew which witnesses were going to be called to testify; 52) counsel stated Petitioner wanted the witnesses to testify at trial; 53) counsel testified that Investigator Sanders stated that there was no damage to the front door; 54) however, counsel stated that police took pictures of the front door; 55) counsel stated that it was her trial strategy to bring out these type of inconsistencies;

56) the PCR court found that Petitioner' claim that counsel was ineffective for eliciting corroborative hearsay testimony from prosecution witnesses and defense witnesses as to



what the victim said thereby bolstering the victim's credibility was without merit; 57) it was trial counsel's strategy to bring out the inconsistencies in Petitioner's story by calling other witnesses; 58) it was trial counsel's strategy to call Renee Tyler and Mary Sharp to show that the victim had falsified documents for mentally handicapped people; 59) the PCR court noted that courts are wary about second-guessing defense counsel's tactics; 60) trial counsel articulated valid strategic reasons for eliciting the testimony from both prosecution and defense witnesses as to what the victim said; 61) Petitioner failed to present specific and compelling evidence that trial counsel committed either errors or omissions in her representation of the Petitioner; 62) Petitioner also failed to show he was prejudiced by trial counsel's performance; 63) Petitioner's allegation that trial counsel was ineffective for failing to motion the court for a Rule 609 balancing analysis was without merit;

64) counsel stated that Petitioner wanted to testify during trial and the court informed him that he would be impeached with his prior offenses; 65) trial counsel stated that Petitioner had a prior 2006 CSC conviction and that she explained to Petitioner that he was going to be impeached with his prior conviction if he chose to testify; 66) counsel stated that she objected to the use of the conviction and argued that it would be more prejudicial than probative; 67) however, trial counsel stated that the charge was within the ten year time period necessary for impeachment purposes; 68) trial counsel further stated that the court had a side bar where the judge explained he was going to allow Petitioner to be impeached with the prior conviction, but to remind him to place on the record his 403 analysis; 69) Petitioner can show no prejudice as a result of trial counsel's alleged deficiency; 70) Petitioner could have been impeached with his 2006 conviction for first degree CSC because the



Colf[10] factors support that the probative value of the prior conviction outweighed the prejudicial effect; 71) clearly, the offense was punishable by more than one year in prison and had occurred within the last ten years;

72) although the crime was not a crime of dishonesty, the rule itself recognizes that impeachment value exists simply because of the fact that Petitioner was convicted of a felony offense; 73) here, since Petitioner's other prior convictions were too remote to be used for impeachment, the jury would have been misled into believing Petitioner had a totally clean record - and was therefore more credible than he actually was - absent evidence of the CSC conviction; 74) the CSC conviction's impeachment value was enhanced for this reason; 75) in addition, the CSC conviction took place fairly close to the time of the crime and the time of trial, since it occurred in 2006; 76) importantly, the prior conviction for CSC in the first degree had absolutely no similarity to attempted robbery, kidnapping, and burglary in the first degree, the offenses for which the Petitioner was on trial; 77) therefore, it was not at all likely that the jury would believe that, because Petitioner had a previous conviction for CSC, he was more likely to have committed the crimes for which he was on trial; 78) in sum, the Colf factors supported the admission of Petitioner's CSC conviction for impeachment, and trial counsel was not ineffective for failing to motion the court for a Rule 609 balancing test; 79) accordingly, Petitioner failed to prove the first and/or second prong of the Strickland[11] test. (R.pp. 560-568, 572-574).[12] As noted, the South Carolina Supreme Court

---

[10]State v. Colf, 525 S.E.2d 246 (S.C. 2000); see also Rule 609(a)(1), SCRE.

[11]Strickland v. Washington, 466 U.S. 668 (1984).

[12]The PCR court also made other findings of fact and legal conclusions that have not been set forth. The undersigned only included the facts and legal conclusions relevant and/or related to the claims at issue.



denied Petitioner's appeal. See Court Docket No. 18-5.

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001). However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland, 466 U.S. at 698; Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Even so, with regard to the ineffective assistance of counsel claims that were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined

16



by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.1996). For the reasons set forth and discussed hereinbelow, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975)[Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

### (Ground One)

In Ground One of his Petition, Petitioner contends that his counsel was ineffective for calling two of the alleged victim's supervisors who testified that the victim was a "very good employee" and a "wonderful employee." A review of the record confirms that, at trial, Petitioner's



17

counsel called Tyler, the victim's former supervisor. (R.pp. 260-261). Tyler testified that she spoke with the victim on the phone after the incident occurred in order to get a statement for a worker compensation report. (R.p. 262). The victim relayed to her that one person entered the home and that when he tried to exit through the side door that another person was standing at the side door with a gun. (R.pp. 263-265). However, although Tyler relayed what the victim told her about the Petitioner, she did not reference anything about the man who busted in the front door having a gun. (R.pp. 264-265). Tyler testified that she put this information in her statement for the worker's compensation claim, including that she had talked to the victim, and certified that the information was true to the best of her knowledge. (R.pp. 265-266). It was on cross examination that Tyler testified the victim was a good employee and that she had never had any problems with him. (R.p. 268). Even so, on redirect by Petitioner's counsel, Tyler admitted that she had given the victim a disciplinary action for falsifying accountability logs. (R.pp. 269-270, 272).

Petitioner's counsel also called Mary Rachel Sharp, another supervisor of the victim, as a witness. (R.p. 273). Sharp testified that she realized the morning after the incident that the log had been falsified. (R.p. 276). She then testified on cross-examination that the victim was a wonderful employee and that she was embarrassed to have to write him up for falsifying records. (R.p. 277).

At his PCR hearing, Petitioner testified that he did not know that Tyler and Sharp were going to testify, and that he did not have any discussions with his counsel about these two witnesses testifying. (R.p. 503). Petitioner argued that by Tyler and Sharp testifying that the victim was a good employee, they bolstered the victim's credibility and prejudiced him. (R.pp. 504-505). However, Petitioner's counsel testified that she attempted to discredit the victim by showing that he was a liar,



18

that he falsified records at work, and that he told inconsistent stories about what happened. (R.pp. 533-534). Petitioner's counsel testified that credibility was extremely important and that her strategy throughout the case was to discredit the victim. (R.p. 538). Counsel testified that the jury had already heard the victim's version more than once of what had occurred,[13] and that she called other witnesses in order to bring out the different stories that the victim had told. Counsel opined that the jury had already heard the victim's testimony and that she did not believe these witnesses were bolstering his testimony. Rather, trial counsel argued that she wanted the jury to hear the different stories that the victim had told. (R.p. 539). Counsel also testified that her main purpose in calling Tyler and Sharp was to have them testify that the victim had lied on official documents where he was responsible for the care of mentally handicapped people. (R.p. 541). Counsel then testified that Petitioner also wanted these witnesses called for the same reasons. (R.p. 544).

Although Petitioner disagrees with his trial counsel's strategy with the benefit of hindsight, the strategy used by Petitioner's trial counsel gave the jury a way to discredit the victim and believe the Petitioner's version of the story. As previously discussed, the PCR court held and pointed out that Petitioner' claim that counsel was ineffective for eliciting corroborative hearsay testimony from prosecution witnesses and defense witnesses as to what the victim said thereby bolstering the victim's credibility was without merit, as it was trial counsel's strategy to bring out the

---

[13]The victim testified At trial that when the Petitioner busted in the door, he attempted to run away from the Petitioner, but that when he tried to run out of the side door, Petitioner caught up with him and put a gun to his head. (R.p. 48). After discussing some other details, the victim stated that he saw a second guy standing under a ceiling fan in the living room, but he did not testify that the second guy had a gun. (R.pp. 51, 53-55). The victim also testified with respect to the falsified log that he completed the log with the patient's activities when he first arrived at work in advance of when those times occurred, rather than recording their activities as they occurred. (R.pp. 91-94). The victim acknowledged in his testimony how important the log is, and that he was written up for falsification of documentation. (R.pp. 94-96).



inconsistencies in Petitioner's story by calling other witnesses.  It was also trial counsel's strategy to call Renee Tyler and Mary Sharp to show that the victim had falsified documents for mentally handicapped people.  The State Court found that trial counsel had articulated valid strategic reasons for eliciting the testimony from both prosecution and defense witnesses as to what the victim said, that Petitioner had failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Petitioner, and that Petitioner had also failed to show he was prejudiced by trial counsel's performance. (R.pp. 566-568).  The undersigned agrees.

While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel.  Strickland, 466 U.S. at 689.  Petitioner has not shown that if these two witnesses had not been called, it would have resulted in a different outcome in this case.  Rather, he only speculates that it would have affected the outcome of the case.  Such an unsubstantiated offering is insufficient to show his counsel was ineffective.  There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner.  Id. at 688–689;  Bunch v. Thompson, 949 F.2d 1354 (4th Cir.1991), cert. denied, 505 U.S. 1230 (1992);  Horne v. Peyton, 356 F.2d 631, 633 (4th Cir.1966), cert. denied, 385 U.S. 863(1966);  Burger v. Kemp, 483 U.S. 776 (1987); see also Harris v. Dugger, 874 F.2d 756, 762 (11th Cir.1989), cert. denied, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.].

Moreover, the PCR court found trial counsel's testimony credible (and Petitioner not credible), and credibility findings are entitled to great deference by this court in a habeas action. (R.p.



566). See Wilson v. Ozmint, 352 F.3d 847, 858-859 (4th Cir. 2003); Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court . . . ."]. While a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it may disagree with the state court's findings (assuming that were to be the case). See Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008) ["[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear . . . . Indeed, 'federal habeas courts [have] no license to redetermine credibility issues of witnesses whose demeanor has been observed by the state trial court, but not by them.'" (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983))]. Further, given the deference due the state court's findings, Petitioner has not shown that the state court's findings were unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir. 2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312; see also Seymour v. Walker, 224 F.3d 542, 553 (6th Cir. 2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."].

In sum, Petitioner has failed to show that trial counsel's performance was deficient in calling these two witnesses. Nor has Petitioner shown the likelihood of a different outcome.



Therefore, even if Petitioner had shown that his counsel's performance was deficient, he has not shown any prejudice as a result of counsel calling these two witnesses. Petitioner has also failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable. Therefore, his claim that his counsel was ineffective on this ground should be dismissed. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because [its purpose] is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction"].

**(Ground Two)**

In Ground Two of his Petition, Petitioner contends that his counsel was ineffective for failing to preserve for appellate review the admission of Petitioner's prior conviction for C.S.C.[14] The trial record reflects that at trial, outside the presence of the jury, the solicitor referenced Petitioner's burglary second conviction in 1993, but that conviction was over ten (10) years old and was not admitted. (R.p. 195). The solicitor then referenced Petitioner's CSC 2006 conviction as an impeachable offense, and Petitioner's counsel requested that the trial court not allow the state to use the CSC conviction, arguing that the prejudice would outweigh its probative value to the state.

---

[14]Although this issue is listed as Ground Two in the original petition, it is discussed by Petitioner in his opposition to summary judgment motion under Issues 5-6. See Court Docket No. 41-1, pp. 8-13, 20-23.



Petitioner's counsel argued that this particular offense was not indicative of credibility, and that the State should not be allowed to use that particular charge for impeachment purposes against the Petitioner. (R.p. 196).

The record further shows that on direct examination, Petitioner's counsel asked him to confirm that he had been convicted of CSC in 2006, which he confirmed. (R.p. 241). Petitioner also confirmed this conviction on cross examination. (R.p. 257). At sentencing, the trial judge referenced a certified copy of the sentencing sheet from Petitioner's CSC conviction in 2006. (R.p. 335). The trial judge made a finding that he had looked at Petitioner's previous record and found that Petitioner did have a conviction for a most serious offense (the CSC conviction). (R.pp. 337-338). Petitioner's counsel then stated that she needed to put one last matter on the record, and discussed an earlier side bar with counsel and the judge where she had asked for clarification on the judge's ruling that he was going to allow Petitioner's prior conviction to be admitted. The trial judge confirmed his ruling on the record and that he had made an analysis under Rule 403 and found the conviction to be more probative than prejudicial. (R.p. 340). The judge stated that he found it to be a proper matter for the jury to have for them to determine the credibility of the witnesses and they were charged that it could only be used for credibility purposes. (R.pp. 340-341). The trial judge then stated that he stood by his ruling. (R.p. 341).

At the PCR hearing, Petitioner testified that his counsel had committed error by failing to motion the trial court for a balancing analysis. (R.pp. 510-511). Petitioner acknowledged that he had a prior CSC and that there had been a discussion prior to him testifying about it being admitted to impeach him. (R.p. 511). However, Petitioner testified that there was no analysis made regarding the conviction and whether it should be admitted. (R.p. 512). Petitioner testified that his counsel



brought up the CSC conviction during his direct examination, and opined that his counsel had done so to suppress the "sting" of it and that he supposed she did so because the trial judge had already made his ruling allowing it in. (R.p. 512). However, Petitioner also states that she could have made a contemporaneous objection, but then appears to concede that she did object. (R.p. 512). However, he argues that she did not receive a ruling on her objection. (R.p. 513). Petitioner contends that he attempted to raise this issue on appeal, but that his appeal was dismissed due to his counsel failing to make a contemporaneous objection. (R.p. 513).

Petitioner's counsel testified that the trial judge did his analysis at a side bar, because he did not like to send the jury out a lot of times during the trial. She said that she had tried other cases in front of this same judge and that this was his normal procedure. She testified that sometimes he would remember and put it on the record later and other times she would later request that he put on the record, which is what occurred during the side bar. (R.p. 551). Trial counsel also testified that although she could not remember specifically in this case, that she often would bring up a client's criminal record if she knew that it was going to be admitted in order to take the wind out of the sails of the solicitor's argument. (R.pp. 552-553).

Although Petitioner did attempt to raise the underlying issue on direct appeal, it was dismissed due to his trial counsel's failure to make a contemporaneous objection. See Court Docket No. 18-8. As for Petitioner's PCR ineffective assistance claim that his counsel should have made a contemporaneous objection, the PCR court found that trial counsel had objected, and that in any event Petitioner had failed to show prejudice from his counsel's failure to do so. (R.pp. 573-574). The undersigned can discern no reversible error in this finding. Assuming that counsel failed to make a contemporaneous objection, Petitioner has failed to show the necessary prejudice, as the record



clearly reflects that the trial court confirmed that trial counsel had raised the issue to him, that he had conducted a balancing analysis, and that he stood by his decision to allow the conviction into evidence. (R.pp. 340-341).   Accordingly, Petitioner has not shown that the outcome of his trial would have been different if his counsel had made a contemporaneous objection.

Petitioner has also not shown any prejudice from the underlying issue not being reached on his appeal. The PCR court found Petitioner's allegation that trial counsel was ineffective for failing to motion the court for a Rule 609 balancing analysis to be without merit, noting that even though counsel objected to the use of the conviction and argued that it would be more prejudicial than probative, the charge was within the ten year time period necessary for impeachment purposes and Petitioner could be impeached with his 2006 conviction for first degree CSC because the Colf factors supported the trial court's finding that the probative value of the prior conviction outweighed the prejudicial effect. The PCR court found that the offense was clearly punishable by more than one year in prison and that it had occurred within the last ten years, and that although the crime was not a crime of dishonesty, the rule itself recognized that impeachment value exists simply because of the fact that Petitioner was convicted of a felony offense. The PCR court further noted that since Petitioner's other prior convictions were too remote to be used for impeachment, the jury would have been misled into believing Petitioner had a totally clean record - and was therefore more credible than he actually was - absent evidence of the CSC conviction, and that the CSC conviction's impeachment value was enhanced for this reason. Additionally, the CSC conviction took place fairly close to the time of the crime and the time of trial, since it occurred in 2006, and that since the prior conviction for CSC in the first degree had no similarity to attempted robbery, kidnapping, and burglary in the first degree, the offenses for which the Petitioner was on trial, it was not likely that the jury would



believe that he was more likely to have committed the crimes for which he was on trial just because Petitioner had a previous conviction for CSC. (R.pp. 573-574). In sum, the PCR court determined that the Colf factors supported the admission of Petitioner's CSC conviction for impeachment purposes, and that trial counsel was therefore not ineffective for failing to motion the court for a Rule 609 balancing test. (R.pp. 572-574).

The undersigned agrees, and finds that even if Petitioner could show that his counsel's performance was deficient in not making a contemporaneous objection, he has not shown any prejudice as a result of counsel not reminding the trial judge to put his ruling on the record at the time it was made. Petitioner has also failed to present evidence sufficient to show that the state court's rejection of this claim was unreasonable, and his claim that his counsel was ineffective on this ground should therefore be dismissed. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra; Strickland v. Washington, supra.; Greene v. Fisher, 132 S.Ct. 38, 43 (2011)[observing that AEDPA's "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is difficult to meet, because its purpose] is to ensure that federal habeas relief functions as guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction"].

### III.

With regard to Petitioner's remaining grounds in his Petition (Grounds Three through



Twelve[15]), Petitioner did initially either reference these claims in his PCR filings or otherwise pursued them in his PCR proceedings including his PCR hearing, and the majority of them were ruled on by the PCR court. (R.pp. 354, 359, 488, 490-557, 558-576). However, it is undisputed that none of these grounds were raised or presented in his PCR appeal. See Petition for Writ of Certiorari, p. 1 [Court Docket No. 18-13, p. 2].[16]

Hence, since Petitioner did not properly pursue these Grounds of this Petition in his state court proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when

---

[15]The undersigned has used Petitioner's original numbering of his Grounds in his Petition (not the number in his memorandum in opposition).

[16]To the extent Petitioner's originally numbered Ground Seven may encompass claims also asserted in Ground Two, they have been addressed, supra.



exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because these issues were not *properly* pursued and exhausted by the Petitioner in state court, federal habeas review of these claims are now precluded absent a showing of cause and prejudice, or actual innocence. ; Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, supra; Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Although Petitioner does not offer any "cause" in his memorandum in opposition to summary judgment, he states in his petition that these issues were not pursued in his PCR appeal due to error of his PCR appellate counsel on his writ.  See Petition.

The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also  Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon,



14 F.3d 956, 973 (4th Cir. 1994)(en banc).  However, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute "cause" for a procedural default.  Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings.  A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment.  Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932  (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

However, in Martinez the Supreme Court did carve out a "narrow exception" that modified

> "the unqualified statement in Coleman that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." Martinez, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." Id. at ____, 132 S.Ct. at 1317.
>
> Second, ineffective assistance of counsel on *direct appellate review* could amount to



29

"cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were Coleman read broadly) deprive a defendant of any review of that claim at all. Martinez, supr a at ___, 132 S.Ct. at 1316.

We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); see also Gray v. Pearson, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default. Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."] Therefore, because, under South Carolina law, a claim of ineffective assistance of trial and/or appellate counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 526 Fed.Appx. at 333, at fn *; a claim for ineffective assistance of PCR counsel as "cause" for a procedural default can be considered



under the revised standard of <u>Martinez</u> and <u>Trevino</u>.

Even so, and significantly for purposes of Petitioner's claim here, the <u>Martinez</u> exception only applies to initial PCR counsel.[17] A claim of ineffective assistance of PCR *appellate* counsel (which is Petitioner's claim) is not cause for a default. <u>Martinez</u>, 132 S.Ct. at 1316; <u>see</u> <u>Johnson v. Warden of Broad River Corr.</u>, No. 12-7270, 2013 WL 856731 at * 1 (4th Cir. Mar. 8, 2013)[PCR appellate counsel error cannot constitute cause under <u>Martinez</u> exception]; <u>Cross v. Stevenson</u>, No. 11-2874, 2013 WL 1207067 at * 3 (D.S.C. Mar. 25, 2013)["*Martinez* . . . does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default. In fact, the Supreme Court expressly noted that its holding 'does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."](quoting <u>Martinez</u>, 132 S.Ct. at 1320); <u>Rodriguez v. Padula</u>, No. 11-1297, 2014 WL 1912345 at * 7 (D.S.C. May 12, 2014);<u>Johnson v. Cartledge</u>, No. 12-1536, 2014WL 1159591 at *10 (D.S.C. Mar. 21, 2014](same); <u>Abney v. Warden, Perry Corr. Inst.</u>, No. 14-4084, 2015WL 5783295 at * 23 (D.S.C. Sept. 29, 2015)["Under *Martinez*, ineffective assistance of initial PCR counsel, not appellate PCR counsel, may constitute cause for a procedural default."]; <u>Lewis v. Williams</u>, No. 12-3214, 2013 WL 3929993 at *4 (C.D.Ill. July 29, 2013)[Ineffective assistance of PCR appellate counsel is not a ground for relief under § 2254]; <u>Flowers v. Norris</u>, No. 07-197, 2008 WL 5401675 at * 11 (E.D.Ark. Dec. 23, 2008)[same]. Therefore, since Petitioner's alleged "cause" for not properly raising the remaining Grounds set forth in his federal habeas petition in his PCR appeal is

---

[17]Petitioner does not make any assertions and/or arguments that any conduct by his PCR counsel constitutes cause for his failure to pursue any of these alleged claims. <u>See</u> Petition; <u>see also</u> Memorandum in Opposition to Summary Judgment.



based on alleged ineffective assistance of PCR appellate counsel, Petitioner has not shown the necessary cause to proceed with these Grounds. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]. As such, these claims are procedurally barred from consideration by this Court. Id.; see 28 U.S.C. § 2254; see also discussion, supra.

Finally, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if these claims are not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496). Cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges on which he was found guilty. See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an actual innocence claim). Cf. Prieto, 791 F.3d at 472-473 [Even in a habeas case where the petitioner is challenging his death sentence, the Fourth Circuit has emphasized the fundamental miscarriage of justice exception imposes a demanding burden and provides relief only in extraordinary



circumstances]; <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Grounds Three through Twelve set forth by Petitioner in this habeas petition are procedurally barred from consideration by this Court, and must be dismissed. <u>Id.</u>; <u>see</u> 28 U.S.C. § 2254; <u>see</u> <u>also</u> discussion, <u>supra</u>.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that this petition be **dismissed**.[18]

---

[18]In making this recommendation, it is noted that the Court earlier denied Petitioner's motion seeking a stay on this Petition to allow him to return to state court at some undetermined future date to pursue his claims that are procedurally barred. As was noted by the court at that time, in order for Petitioner to be entitled to a stay of his federal petition, he must show good cause; <u>see</u> <u>Rhines v. Weber</u>, 544 U.S. 269 (2005); with the definition of "good cause" being flexible depending on the facts and circumstances.

> "The Fourth Circuit and courts in this district have yet to precisely define what constitutes good cause under <u>Rhines</u>." <u>Clement v. Ballard</u>, No. 2:15-CV-02320, 2015 WL 6690158, at *10 (S.D.W. Va. Sept. 22, 2015) [collecting the split authority on whether ineffective assistance of PCR counsel may constitute good cause for a stay], *adopted by*, 2015 WL 6680893 (S.D.W. Va. Nov. 2, 2015). The Court emphasizes its good cause analysis is limited to the specific facts and circumstances of Petitioner's case.

<u>Stokes v. Stirling</u>, No. 16-845, 2017 WL 1104926, at *2 (D.S.C. Mar. 24, 2017).

In a Report and Recommendation entered December 5, 2017, the undersigned found that, based on the record before the Court at that time, Petitioner had not set forth specific facts and circumstances to show good cause for the Court to grant a stay in this case. The undersigned also noted that the Court cannot just assume good cause exists based on Petitioner's mere allegations that he may have some other state issues he will or will not be allowed to pursue in state court and which would justify a stay of an unknown duration, nor was there anything in the record to indicate that Petitioner had filed another state court action regarding these claims. Accordingly, the undersigned recommended that Petitioner's motion to stay be denied, without prejudice, and on December 20, 2017, the Honorable Henry M. Herlong, Jr., United States District Judge, adopted the Report and

(continued...)



The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

April 26, 2018
Charleston, South Carolina

---

[18](...continued)
Recommendation and denied Petitioner's motion to stay without prejudice.

It is further noted that in that Report and Recommendation, Petitioner was instructed to file his response to the pending motion for summary judgment by January 5, 2018, that he could present any grounds for good cause for why a stay should be entered as part of his response, if he desired to do so, and that the Court would then consider whether Petitioner was entitled to a stay, or if not, whether the Respondent is entitled to summary judgment. However, despite these instructions and guidelines, Petitioner did not present any good cause for why a stay should be granted or for why his motion should be reconsidered.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).